UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIN RYAN,<br><br>        Plaintiff,<br>v.<br><br>METROPOLITAN DISTRICT<br>COMMISSION<br><br>        Defendant. | CIVIL ACTION NO.<br><br><br><br><br><br><br><br><br><br>June 1, 2018 |

## COMPLAINT

### JURISDICTION AND VENUE

1. This suit is brought pursuant to the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et seq*, as amended by the Civil Rights Act of 1991, 42 U.S.C. §1981, and the Connecticut Fair Employment Practices Act ("CFEPA"), C.G.S. §46a-60, *et seq*.

2. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343. With respect to the state law claims, this Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367, in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in this district is appropriate pursuant to 28 U.S.C. §1391 because this is the district in which the discriminatory conduct occurred.

### PARTIES AND ADMINISTRATIVE PREREQUISITES

4. The plaintiff, Erin Ryan, is a citizen of the United States, actually residing in West Hartford, Connecticut.

5. At all times relevant to this Complaint, the plaintiff was an employee of the defendant, as that term is defined by Title VII, 42 U.S.C. §2000e(f), and CFEPA, Conn. Gen. Stat. §§46a-51(9) and 46a-60.

6. The defendant is the Metropolitan District Commission (hereinafter "the defendant" or "MDC") a non-profit quasi-municipal corporation established by the Connecticut Legislature, which has a business addresses and places of business located at 555 Main Street, Hartford, Connecticut. The defendant employs more than 450 employees.

7. At all times relevant to this Complaint, the defendant has been the plaintiff's employer with the meaning of Title VII, 42 U.S.C. §2000e(b), and CFEPA, Conn. Gen. Stat. §§46a-51(10) and 46a-60.

8. The plaintiff has timely filed administrative charges of discrimination and retaliation with the Connecticut Commission on Human Rights and Opportunities (CHRO) and with the Equal Employment Opportunities Commission (EEOC) on or about September 29, 2017. With respect to the September 29, 2017 administrative complaints, the plaintiff received a Release of Jurisdiction from the CHRO on or about April 11, 2018 and a Notice of Right to Sue from the EEOC on or about April 27, 2018.

9. The plaintiff has fulfilled all administrative prerequisites necessary to maintain this action.

**FACTS**

10. The plaintiff is female.

11. The plaintiff was employed by the defendant from January 17, 2011 until

her employment was terminated on July 26, 2017.

12. Throughout her employment with the defendant, the plaintiff performed the duties and responsibilities of her positions in a dedicated, competent, and satisfactory manner and was never disciplined at any point during her employment.

13. The plaintiff was initially hired by the defendant on January 17, 2011 as an Assistant District Counsel. In this position, plaintiff served as an in-house attorney for the MDC with a focus on labor relations and affirmative action, among other responsibilities.

14. In July 2011, the plaintiff was appointed to the position of Interim Director of Human Resources.

15. On June 13, 2012, the plaintiff was formally appointed to the position of Director of Human Resources ("HR") on a permanent basis. Plaintiff held this position through mid-May 2016.

16. During her employment with the defendant, plaintiff received one employment review, given while she was in the position of Director of HR on or about February 13, 2013. Plaintiff received an "A = Outstanding" – the highest possible rating – in the overall composite rating, and all "A's" and "B's" in the individually rated categories, which were accompanied by positive comments from the then-Deputy CEO, John Zinzarella.

17. From December 2, 2015 until mid-May 2016 the plaintiff was out of work on maternity leave.

18. In April 2016, while still on maternity leave, the plaintiff had two conversations with the defendant's CEO, Scott Jellison, about her upcoming return to work and concerns she had about increased family responsibilities. The plaintiff and Jellison discussed the possibility of the plaintiff returning on a schedule in which she would work four (4) days a week in the Director of HR role, but the plaintiff was ultimately told that a four (4) day schedule was not an option for that position.

19. When the plaintiff returned from maternity leave in mid-May 2016, she did not return to the prior Director of HR position – instead accepting a new assignment with the Business Transformation ("BT") team related to the defendant's SAP implementation project, specifically the implementation of a cloud-based HR platform where she worked a four (4) day work week. The plaintiff continued working in this role until her employment was terminated on July 26, 2017.

20. On March 6, 2017, the defendant issued an internal posting seeking to fill the vacant Director of HR position. This was the same position the plaintiff had previously performed for nearly five (5) years.

21. The plaintiff submitted an application for the Director of HR position on or about March 9, 2017.

22. The only other applicant for the Director of HR positon was Robert Zaik ("Zaik"), who is male.

23. Zaik reported to the plaintiff when she previously held the position of Director of HR.

24. On March 24, 2017, both Zaik and the plaintiff were interviewed for the Director of HR position by the defendant's Deputy CEO John Zinzarella and CEO Jellison (who are both males).

25. On April 3, 2017, the plaintiff was informed by Jellison that she was not selected for the Director of HR position and that Zaik was selected for it instead. Jellison indicated in that meeting that he had selected Zaik for the position because he was more of a "do-er" and the plaintiff was more of a "policy person."

26. Jellison made the final decision to hire Zaik over the plaintiff for Director of HR.

27. On information and belief, the plaintiff was better qualified than Zaik for the Director of HR position.

28. On or about April 11 and again on or about April 17, the plaintiff requested copies of the recruitment file for the Director of HR position. These are public documents subject to disclosure under the Freedom of Information Act (FOIA).

29. On April 17, 2017, the plaintiff received an e-mail from CEO Jelllison stating that he had received her request for documents regarding the interview process, that the request had been sent to outside counsel David Ryan for review, and that he wanted to schedule a meeting for April 20 at 2 p.m. that would include the plaintiff, Jellison and David Ryan.

30. On or about April 20, 2017, the plaintiff attended the meeting with Jellison and Ryan to which she brought a co-worker, Mario Calderon. During this meeting Jellison stated that one of the reasons he had not selected the plaintiff for the Director

of HR position was because of her family status. The plaintiff responded by stating that that was an illegal reason.

31.     During and following her application for the Director of HR position, the plaintiff continued working on her assignment in furtherance of the SAP implementation project.

32.     Although the plaintiff was aware that as the SAP implementation project went live – which for the purposes relative to her role was expected to occur in February 2018 – her assignment to the BT team would likely end, the defendant had assured her that she would continue to have a place working for the MDC after that project concluded.

33.     On July 26, 2017, the plaintiff was called into a meeting with Christopher Stone ("Stone"), one of defendant's Assistant District Counsel, and outside counsel, David Ryan, and was informed that she was being laid off.  Stone said that there was no longer any work for the plaintiff on the BT team because of delays that had occurred on the SAP implementation project.

34.     During the above meeting, the plaintiff asked Stone about two other positions for which she was qualified – namely an open HR Generalist position and a position in the MDC's legal department.  Stone told the plaintiff neither was an option.

35.     On information and belief, the defendant's stated reasons for deciding to hire Zaik over the plaintiff for the Director of HR position and for terminating her employment were false and pretextual.

**COUNT ONE:   DISCRIMINATION IN VIOLATION OF TITLE VII**

36. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-35 above.

37. On information and belief, the defendant's actions in not hiring the plaintiff for the Director of HR position were motivated by her gender.

38. On information and belief, the defendant's decision to terminate the plaintiff's employment on July 26, 2017 was motivated by her gender.

39. By the conduct described in this count, the defendant has discriminated against the plaintiff in violation of the rights secured to her by Title VII, 42 U.S.C. §2000e-2, *et seq*.

40. The defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the plaintiff's federally protected rights.

41. As a result of the defendant's unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of her career, damage to her professional reputation, pain and suffering, anxiety, humiliation, shame and other emotional distress.

**COUNT TWO:   DISCRIMINATION IN VIOLATION OF CFEPA**

42. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-41 above.

43. On information and belief, the defendant's actions in not hiring the plaintiff for the Director of HR position were motivated by her gender.

44. On information and belief, the defendant's decision to terminate the plaintiff's employment on July 26, 2017 was motivated by her gender.

45. By the conduct described in this count, the defendant has discriminated against the plaintiff in violation of the rights secured to her by CFEPA, C.G.S. §46a-60(a)(1), *et seq*.

46. The defendant engaged in the above discriminatory conduct with malice or with reckless indifference to the plaintiff's statutorily protected rights.

47. As a result of the defendant's unlawful conduct, the plaintiff has suffered and continues to suffer a loss of employment, lost compensation, seniority and fringe benefits, and other rights, privileges and conditions of employment, an interruption of her career, damage to her professional reputation, pain and suffering, anxiety, humiliation, shame and other emotional distress.

## COUNT THREE: RETALIATION IN VIOLATION OF TITLE VII

48. The plaintiff hereby repeats, realleges and incorporates paragraphs 1-47 above.

49. By the acts and conduct described above, the defendant unlawfully retaliated against the plaintiff because of her complaints regarding the defendant's discriminatory conduct during the Director of HR hiring process, in violation of Title VII, 42 u.S.C. §2000e-3(a).

50. By the above-described acts and conduct, the defendant was engaged in discriminatory practices with malice or with reckless indifference to the plaintiff's federally protected rights.

51.     As a result of the defendant's unlawful conduct, the plaintiff has suffered, and continues to suffer, a loss of wages and benefits of employment, and has experienced anxiety, embarrassment, pain, suffering and emotional distress.

## COUNT FOUR:   RETALIATION IN VIOLATION OF CFEPA

52.     The plaintiff hereby repeats, realleges and incorporates paragraphs 1-51 above.

53.     By the acts and conduct described above, the defendant unlawfully retaliated against the plaintiff because of her complaints regarding the defendant's discriminatory conduct during the Director of HR hiring process, in violation of CFEPA, Conn. Gen. Stat. §46a-60(a)(4).

54.     By the above-described acts and conduct, the defendant was engaged in discriminatory practices with malice or with reckless indifference to the plaintiff's statutorily protected rights.

55.     As a result of the defendant's unlawful conduct, the plaintiff has suffered, and continues to suffer, a loss of wages and benefits of employment, and has experienced anxiety, embarrassment, pain, suffering and emotional distress.

## DEMAND FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court grant her the following relief:

1. Order the defendant to immediately reinstate the plaintiff to employment as Director of Human Resources, or to the position that she would have been in, or a substantially similar position, absent the defendant's discriminatory and retaliatory treatment;

2. Award the plaintiff lost wages and lost benefits of employment;

3. Award the plaintiff compensatory and punitive damages including for pain and suffering;

4. Award the plaintiff reasonable attorneys' fees, costs and interest; and

5. Award the plaintiff all other legal and/or equitable relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The plaintiff hereby demands a trial by jury as to all claims to which she is entitled as a matter of law.

                                RESPECTFULLY SUBMITTED
                                THE PLAINTIFF,

By: _____
            Gregg D. Adler ct05698
            Nicole M. Rothgeb ct26529
            Livingston, Adler, Pulda, Meiklejohn
              & Kelly, PC
            557 Prospect Avenue
            Hartford, CT  06105-2922
            (860) 233-9821
            gdadler@lapmk.org
            nmrothgeb@lapm.org